## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRYSTAL SHORE, individually and on behalf of all others similarly situated, | ) ) Case No.: 1:25-cv-11232 |
| Plaintiff, | ) ) **CLASS ACTION COMPLAINT** |
| v. | ) ) **JURY TRIAL DEMANDED** |
| DOREL JUVENILE GROUP, INC., | ) ) |
| Defendant. | ) |

### CLASS ACTION COMPLAINT

Plaintiff Crystal Shore ("Plaintiff"), by and through undersigned counsel, and on behalf of herself and all others similarly situated, brings this class action complaint against Defendant Dorel Juvenile Group, Inc. ("Defendant" or "Dorel") and alleges the following based upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation of counsel:

### NATURE OF THE ACTION

1.     This case seeks to end Defendant's improper sales and deceptive marketing of certain of its Car Seats (defined herein), which are unreasonably dangerous and pose a heightened risk of choking hazard, all of which is undisclosed at the point of sale.

2.     The Defect is confirmed by Dorel's voluntary recall of the Products that affects approximately 180,000 units manufactured between February and December 2023 on April 18, 2025 (the "Recall").[1]

---

[1] *See* https://www.mother.ly/health-wellness/safety-1st-car-seats-recalled-over-choking-hazard/ (last accessed May 5, 2025).

3.     Through its Safety 1st brand, Dorel designs, manufactures, markets, distributes, sells, and charges a premium for the Car Seats at issue, in this case, the Safety 1st Grow and Go Sprint Car Seat ("Products" or "Car Seats").

4.     Defendant recently recalled certain of its Car Seats for an underlying defect: namely, the headrest cover is easily removable by infants and young children, exposing foam that presents a choking hazard to young children.

5.     The Products model numbers included in the recall are as follows[2]: CC321GYU, CC321GYUD,     CC321GYY,     CC321GYYD,     CC321HAO,     CC321HAR.

 

CC321GYU                CC321GYY

CC321GYUD               CC321GYYD

 

CC321HAO                CC321HAR

[2]Safety 1st Grow and Go Sprint Car Seats: https://safety1st.com/pages/safety-1st-grow-and-go-sprint-model-cc321-voluntary-recall?_pos=1&_sid=470003e3e&_ss=r (last accessed on May 5, 2025).

6.     However, this Recall is wholly inadequate. Rather than actually recalling this unsafe Product, Dorel instead only offers to provide parents with free recall kit with a new headrest pad to cover the headrest foam, purportedly to prevent access by a child.[3]  This headrest cover does not provide *real* relief and restoration of the benefit of the bargain, and instead leaves parents with a Car Seat that has diminished in value, remains dangerous, and they will not use again given the mistrust that has arisen.

7.     Defendant makes misrepresentations concerning the safety of its product to increase profits and market share in the growing baby products market where safety is a significant consumer purchasing decision. Indeed, consumers value safe products to give to their babies free of choking hazards. Dorel knows this: the brand at issue is called "Safety 1st."

8.     Before the Products were made available for sale to consumers, Defendant was aware, or should have been aware, that the headrest cover could become unsecured. This could allow a child to pull off pieces of foam and potentially choke on them. However, Defendant misrepresented, omitted, and concealed this material fact to all reasonable consumers, including Plaintiff and Class members, by not including this information anywhere on the Products' labeling.

9.     Plaintiff and Class members reasonably relied on Defendant's misrepresentations and material omissions when purchasing the Products.

10.     Plaintiff and Class members purchased the Products and paid a price premium based on Defendant's misrepresentations and omissions.

11.     Because Defendant's false and misleading misrepresentations and omissions dupe reasonable consumers into believing the Products feature premium attributes, Defendant's safety representations thus dupe reasonable consumers into paying premium prices for the Products, even

---

[3] *See* https://safety1st.com/pages/safety-1st-grow-and-go-sprint-model-cc321-voluntary-recall?_pos=1&_sid=470003e3e&_ss=r (last accessed May 5, 2025)

though they do not actually feature the premium attributes for which the consumers, including Plaintiff and Class members, pay.

12.     Defendant is, therefore, liable to Plaintiff and Class members for selling the Products that contain the false misrepresentations and material omissions.

13.     As a result of the Defect, which exists at the point of purchase and is known to Dorel and unknown to consumers, the Car seats are unable to conform to the promises and representations made by Safety 1st through its "comfortable and secure" marketing, which includes uniform representations displayed on its own website and the websites of authorized retailers, including but not limited to statements such as:

    a.    ""Safety 1st has a wide range of baby car seats and safety products to keep your baby safe" [4]

    b.    "The road ahead is comfortable and secure when your little one rides in a Safety 1st car seat." [5]

    c.    "Designed to be a grow with me car seat, this convertible carseat includes features that simplify adjustments, ensuring a secure fit as your child develops"[6]

14.     This lawsuit seeks to recover monetary damages on behalf of Plaintiff and a Nationwide Class of purchasers of the Products, including California.

---

[4] Display on Safety1st.com. *See* https://safety1st.com/collections/car-seats  (last accessed on May 5, 2025)
[5] *Id.*
[6] Display on Amazon.com: *See* https://www.amazon.com/Safety-1st-Grow-All-Convertible/dp/B08W1WY91B/ref=sr_1_2?crid=U4IUVBVWFVMU&dib=eyJ2IjoiMSJ9.Z7g0RVLVnOMbxR-Iwq1Tq3Bf1dxHeK8xn-p92LHuxjZvoFspl1uiCSAO9AXSrTVq4VJjOLCR4I4iZCEl5AxO-mNOzeWY-GkLz0OGfh1J1xZdQnDA7fUBw5AnIUJIOb9s1v9Ia6EE0OJAOPEGDT6yc9tx-kljU0eKR54d3MNhNRMXWHxrKat3ZYVBcuCwjPT-bds5f-nXXZMTST09y094VY19MKrkehhVJdKaxM3WylupNpr9e5oAZNYuQo63eb5GC7wZGe1MLZwI0VNuztb2IJJ5fBnSsiMHMKsEkpllA4.IArgXf2jRh6h_F8Mz5p0hqaUZaco6EoeRE4cSUzLo6c&dib_tag=se&keywords=Safety%2B1st%2Bcar%2Bseat%2Bgrow%2Band%2Bgrow%2BCC321GYU&qid=1745865822&s=baby-products&sprefix=safety%2B1st%2Bcar%2Bseat%2Bgrow%2Band%2Bgrow%2Bcc321gyu%2Cbaby-products%2C139&sr=1-2&th=1 (last accessed on May 5, 2025)

## PARTIES

15.     Plaintiff Crystal Shore is a resident and citizen of Lancaster, California. Plaintiff purchased the Safety 1st Grow and Go Sprint All-in-One Convertible Car Seat, model number CC321-GYU. Plaintiff purchased the Product online from Wal-Mart. Plaintiff purchased the Products in or around September 2023 at the Products' retail price of approximately $129.

16.     Plaintiff and reasonable consumers believe that the Car Seats containing the misrepresentations and material omissions are safe to use.

17.     When purchasing the Products, Plaintiff read and reviewed the accompanying labels and disclosures and understood them as representations by Defendant that the Products were adequately manufactured, labeled, free from defects, and that the misrepresentations concerning safety of the product were true. Plaintiff read and relied on Defendant's misrepresentations and material omissions when deciding to purchase the Products, and these misrepresentations and material omissions were part of the basis of the bargain. Had Defendant not made the false, misleading, and deceptive misrepresentations and material omissions alleged herein regarding the Products, Plaintiff would not have been willing to purchase the Products. Plaintiff paid a price premium for the Products based on Defendant's misrepresentations and material omissions. Accordingly, Plaintiff was injured and lost money due to Defendant's mislabeling and deceptive conduct.

18.     Defendant Dorel is a corporation organized and existing under the laws of Massachusetts, having a principal place of business at 25 Forbes Blvd., Suite 4, Foxboro, MA, 02035, and a registered agent at 84 State Street, Boston, MA 02109.

19.    Dorel has several baby and juvenile product brands including Maxi-Cosi, Tiny Love, Safety 1st, Cosco, BebeConfort and Infanti.[7]

20.    Defendant represents itself "[a]s a leader in juvenile care," and its role "is to empower parents on their journey, through confidence," by helping them bring "safety and care to the most precious thing there is—life."[8]

21.    Defendant sells the Products throughout the United States, including California. The Products, including those purchased by Plaintiff and Class members, are available at various retail stores throughout the United States, including California. Defendant authorized the false, misleading, and deceptive marketing, advertising, distribution, and sale of the Products to consumers nationwide, including California.

## JURISDICTION AND VENUE

22.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

23.    This Court has personal jurisdiction over Defendant because Defendant is headquartered within the state, and is therefore subject to general jurisdiction within the state. Additionally, the claims asserted in this complaint arise from Defendant's contacts with this District. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers, and/or representatives, operated,

---

[7] *See* https://doreljuvenile.com/our-brands (last accessed on May 5, 2025)
[8] *See* https://doreljuvenile.com/about. (last accessed on May 5, 2025).

conducted, engaged in, and carried on a business venture in Massachusetts, and/or marketed, advertised, distributed and/or sold the Products, committed a statutory violation within Massachusetts related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of Massachusetts, during the relevant time period. At that time, Defendant was engaged in business activities in Massachusetts.

24.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in Massachusetts.

## COMMON FACTUAL ALLEGATIONS

### Defendant's Marketing of Safety 1st Car Seats as "Safe" for Children

25.    Defendant Dorel Juvenile Group designs, manufactures, markets, and sells child safety products, including the Safety 1st Grow and Go Sprint All-in-One car seats. These products are marketed as follow:

> Keep your little one safe as years roll by with the versatile Safety 1st Car Seat. It starts as a rear-facing seat for tiny passengers, converts to forward-facing for toddlers, then transforms into a booster for big kids for reliable use. The QuickFit harness lets you adjust the headrest and harness in one easy step as your child grows. With side impact protection and three recline positions, it's designed for safety and comfort.[9]

26.    "Safety" is the leading representation about the Safety 1st car seats:

> "Safety 1st has a wide range of baby car seats and safety products to keep your baby safe. The road ahead is comfortable and secure when your little one rides in a Safety 1st car seat."[10]

27.    This representation echoes points Dorel makes about its products generally:

---

[9] *See* https://www.canadiantire.ca/en/pdp/safety-1st-car-seat-grow-go-3-in-1-0466829p.html (last accessed on May 5, 2025).
[10] *See* https://safety1st.com/collections/car-seats (last accessed on May 5, 2025).

"Choose from convertible, booster and infant car seats that are designed to provide protection for your little one, so you can take comfort in knowing that your child is riding safe"".[11]

28.     This is materially important to Plaintiffs and reasonable consumers because millions of parents and caregivers know car seats, such as the Products at issue in this litigation, are essential to the safety of children while driving, especially in the event of crash.

29.     All models of the Products are substantially similar in form and function—and therefore, suffer from the same Defect, which prompted Dorel's recall (albeit inadequate) and this litigation. Moreover, all Products contain substantially similar deceptive safety claims made by Dorel on the Products' packaging and website.

**Headrest Foam Defect: A Hidden Choking Hazard**

30.     The affected car seats contain foam padding in the headrest that can become unsecured, allowing children to pull off and mouth pieces of foam—posing a serious risk of choking or suffocation.

31.     Dorel Juvenile Group, the manufacturer of Safety 1st car seats, has received 13 case reports of children with foam pieces from the headrest in their mouths, though no injuries have been reported. [12]

32.     On April 18, 2025, Defendant initiated a voluntary recall in cooperation with NHTSA (Campaign No. 25C-006), offering a replacement headrest pad. However, the recall does not fully address the risks faced by consumers who unknowingly used defective seats.[13]

33.     Dorel's subsequent Recall Notice is poorly designed, ineffective, and inadequate for providing consumers with a meaningful remedy for purchasing the defective Products. Further,

---

[11] *Id*.
[12] *Id.*
[13]    *See*    https://www.consumerreports.org/babies-kids/baby-product-recalls/safety-1st-car-seat-recall-grow-and-go-sprint-a9053668687/ (last accessed on May 5, 2025).

implementing the Recall Notice as it currently, unsufficiently stands constitutes an unfair and deceptive trade practice.

34.    Dorels offers free replacement headrest pad assembly kits, which include a new headrest pad that covers the headrest foam.[14] These modifications significantly diminish the Products' value as "safe".

35.    Moreover, the Recall process burdens consumers who are already living busy lives caring for their children and are not trained nor experienced in designing child products, unlike Defendant.

36.    The Recall Notice is also inadequate for at least two reasons. First, it is inadequate because Dorel failed to recall the entire Product and instead only advised its consumers not to return them to stores and wait until the registered owners received the free replacement headrest.[15] By failing to recall the entire Product, the Recall Notice allows and encourages consumers to continue to use a product with the risk of severe injury.

37.    Second, the Recall Notice is wholly ineffective in providing consumers with monetary remedy for purchasing the dangerously defective and misrepresented Products. Consumers paid an average retail price of $149.99 for the Products, but Dorel has not provided consumers with a monetary remedy.[16]

38.    Prior to the Recall, the Products were sold in stores such as Walmart, Target, Amazon, and others. The Products were also sold online at retailer websites. The base retail pricing of the Products was approximately $149.99 - $199.99.[17]

---

[14] *See* https://abcnews.go.com/GMA/Family/child-car-seats-voluntarily-recalled-due-risk-injury/story?id=121161516 (last accessed on May 5, 2025).
[15] *Id*.
[16] *See* https://safety1st.com/collections/car-seats (last accessed on May 5, 2025).
[17] *Id*.

39.    Every Product suffers from the uniform Defect, which, unknown to consumers but known to Defendant, exists at the point of purchase and poses an unreasonable safety hazard to children. As such, Plaintiff and all reasonable consumers are victims of the unfair bargaining power between them and Defendant based on Dorel's superior industry knowledge.

**Defendant's Knowledge**

40.    Defendant knew that the misrepresentations and material omissions were misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products.

41.    Defendant knew that the misrepresentations and material omissions would lead reasonable consumers into believing that the Products would not expose their infants and young children to harmful choking hazards. Not only has Defendant utilized a long-standing brand strategy to identify the Products as safe, but Defendant also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the misrepresentations and material omissions, in isolation or conjunction with its marketing strategy, would mislead reasonable consumers into believing that the Products are free from harmful choking hazard exposure. Thus, Defendant knew that the misrepresentations and material omissions were misleading before it marketed the Products to the Class, including Plaintiff.

42.    Defendant knew of its misrepresentations and material omissions materiality to consumers. First, manufacturers and marketers, like Defendant, know safety is paramount for consumers of baby and infant products. Here, the omission relates directly to the Products' safety. Second, Defendant's awareness of the importance of the Products' safety, specifically safety

related to the harmful choking hazards of accessible pieces of foam, is reflected by its misrepresentations and material omissions on the Products' front labels and packaging consistent throughout all Product packaging and labeling. Third, it is common sense that information concerning the risk of accessible, harmful choking hazards like the at-issue pieces of foam and the Products' safety is material to consumers as Defendant knows that the risk of health complications from using the Products would affect whether consumers purchased the Products.

43.    Even worse, as the manufacturer and marketer of the Products, Defendant had exclusive control over the misrepresentations and material omissions on the Products' labels, packaging, and advertisements. Defendant could have easily disclosed the risks or rectified consumers' misplaced beliefs by informing them about the accessibility to children of choking hazards like foam. However, despite Defendant's knowledge of the falsity of the representations and omissions and its awareness that consumers reasonably rely on these misrepresentations and material omissions when deciding to purchase the Products, Defendant deliberately chose to market the Products with the misleading omissions. This decision led consumers to buy or overpay for the Products, believing they possessed attributes that Defendant falsely advertised and warranted. Therefore, at all relevant times, Defendant knew that the misrepresentations and material omissions would mislead reasonable consumers, such as Plaintiff, into purchasing the Products to obtain the product attributes that Defendant deceptively portrayed.

**<u>Defendant Had a Duty to Disclose</u>**

44.    Defendant had an obligation, at all relevant times, to disclose the material omissions—that the Products contained a Defect in the headrest, that can result in a choking hazard if children have access to the pieces of foam  to them during ordinary use. This crucial information, which Defendant deliberately withheld from consumers, is material to their purchasing decisions

and has far-reaching consequences for the health and well-being of infants and young children. Defendant knew that reasonable consumers would perceive the Products and the absence of the material omissions to mean that the Products were free from a defect. It was also known that this attribute was a key factor influencing consumers' choices, causing them to rely on the absence of material omission when deciding to purchase the products.

45.     Plaintiff and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for them if they had known that the Products posed the safety risk and, therefore, that the Products do not have the attribute claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's material omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**Defendant's Knowledge, Misrepresentations, Material Omissions, and Concealment of Material Facts Deceived Plaintiff and Reasonable Consumers – This Conduct is Deceptive _and_ Unfair under the ICFA**

46.     To drive up sales in the competitive baby products market and expand its market share, Defendant knowingly omits the material fact that the Products contain a defect in the car seat headrest, allowing a child to pull off pieces of the foam.

47.     Thus, reasonable consumers who are shopping for safe products purchase Defendant's products based on the above misrepresentations and material omissions made by Defendant at the point of sale. But for Defendant's false and misleading misrepresentations and material omissions, these customers would not have purchased Defendant' Products or would not have paid as much as they did.

48.     Additionally, customers chose to purchase Defendant's Products based on the false belief that they did not have harmful plastics and were safe to use as intended. But for Defendant's false and misleading misrepresentations and material omissions, these customers would not have purchased the Products or would have paid less for the Products.

49. Dorel, a large, worldwide company that manufactures, distributes, and sells consumer products, including baby products, knew or should have known that the products contained a defect that would make them unsafe for children.

50. Defendant has engaged in deceptive, untrue, and misleading advertising by making misrepresentations and material omissions discussed above. Defendant's conduct is also deceptive because Defendant omits the material fact that the Products contain a defect that would make them unsafe for children. Defendant's conduct is also **unfair** for all of the reasons discussed above.

51. Plaintiff would not have purchased the Products or paid as much for them had they been truthfully and accurately labeled.

52. Had Defendant adequately tested the Products, it would have been discovered that the Products contained a harmful a defect on the car seats headrest that would make them unsafe for children during normal use, making the Products containing the false representations and omissions illegal to distribute, market, and sell.

53. Defendant's concealment was material and intentional because people are concerned, particularly parents of young children, of the accessibility to hazardous material or to material that a child may choke on, and parents and caregivers such as Plaintiff and class members make purchasing decisions based on the misrepresentations and material omissions made on the Products' labeling.

54. Defendant knows that if it had not made the misrepresentations and material omissions, then Plaintiff and class members would not have purchased the Products or would not have paid as much as they did.

**Injuries to Plaintiff and Class Members – and the Public at Large**

55. When Plaintiff purchased Defendant's Products, Plaintiff did not know and had no reason to know that Defendant's Products contained a defect in the car seat headrest.

56.     Indeed, consumers cannot test or independently ascertain or verify whether a product's covering of small pieces of harmful foam or harmful foam easily broken off is sufficient at the point of sale. Therefore, they must trust and rely on Defendant to truthfully and honestly report what the Products contain on their packaging and labeling.

57.     Further, given Defendant's position as a nationwide leader in the consumer products and baby products industry, Plaintiff and all reasonable consumers trusted and relied on Defendant's misrepresentations and material omissions regarding the Products.

58.     Yet, when consumers look at the Products' packaging, there is no mention of a choking hazard.

59.     No reasonable consumer, including Plaintiff, would have paid as much for Defendant's Products containing the misrepresentations and material omissions had they known those Products contained any amount of harmful or potentially harmful choking hazard due to pieces of foam, let alone at the limits found in Defendant's Products – making such omitted facts material to them.

60.     Defendant's false, misleading, and deceptive misrepresentations and material omissions made on the labeling of the Products are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

61.     Defendant's advertising, labeling, and other public statements deliberately avoided any mention of the presence or risks of foam, despite scientific evidence and industry standards indicating that such risks were foreseeable and preventable.

62.     Defendant's deceptive practices are particularly egregious given the vulnerability of the consumer base for these Products—parents, caregivers, and others seeking safe, reliable

products for infants and children. Defendant exploited this vulnerability by misleading consumers into believing the Products were free of harmful substances.

63.     Plaintiff and Class members are entitled to statutory and punitive damages, equitable relief, attorneys' fees and costs, and any further relief this Court deems just and proper.

## CLASS ALLEGATIONS

64.     Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4).

65.     Plaintiff seeks to represent a class defined as:

> All persons who purchased Products in the United States for personal or household use during the fullest period provided by law ("Nationwide Class").

66.     Plaintiff also seeks to represent a subclass defined as:

> All persons who purchased the Products in California for personal or household use during the fullest period provided by law ("California Subclass").

67.     Plaintiff also seeks to represent a subclass defined as:

> All persons who purchased the Products in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, or Washington for personal or household use during the fullest period provided by law ("Consumer Fraud Multi-State Subclass").[18]

68.     Excluded from the Class and Subclasses are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and their current or former employees,

---

[18] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

officers, and directors; (3) individuals who allege personal bodily injury resulting from the use of the Products; and (4) resellers of the Products.

69.    Plaintiff reserves the right to modify, change or expand the definitions of the Class based upon discovery and further investigation.

70.    *Numerosity*: The Class is so numerous that the joinder of all members is impracticable. The Class likely contains thousands of members based on publicly available data. The Class is ascertainable by records in Defendant's possession.

71.    *Commonality*: Questions of law or fact common to the Class include, without limitation:

    a.    Whether the Products contain a defect;

    b.    Whether a reasonable consumer would consider the presence of harmful choking hazard in the Products (and omission thereof) to be material;

    c.    Whether Defendant knew or should have known that the Products contain a defect;

    d.    Whether Defendant's misrepresentations and material omissions are deceptive;

    e.    Whether Defendant's misrepresentations and material omissions are false and misleading;

    f.    Whether Defendant failed to disclose that the Products contain a defect;

    g.    Whether Defendant concealed that the Products contain a defect;

    h.    Whether Defendant engaged in **<u>unfair or</u>** deceptive trade practices;

    i.    Whether Defendant violated the state consumer protection statutes alleged herein;

    j.    Whether Defendant was unjustly enriched; and

    k.    Whether Plaintiff and Class members are entitled to monetary damages or other damages proscribed by the Court.

72.    *Typicality*: Plaintiff's claims are typical of the claims of Class members. Plaintiff and Class members were injured and suffered damages in the same manner, have the same claims against Defendant relating to the same course of conduct, and are entitled to relief under the same legal theories.

73.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in prosecuting complex class actions, including actions with issues, claims, and defenses similar to the present case. Counsel intends to prosecute this action vigorously.

74.    *Predominance and superiority*: Questions of law or fact common to Class members predominate over any questions affecting individual members. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with multiple lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff is unaware of any difficulties likely to be encountered in managing this action that would preclude its maintenance as a class action.

75.    Accordingly, this class action may be maintained under Fed. R. Civ. P. 23(b)(2) and (b)(3).

## CAUSES OF ACTION

## COUNT I

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class)

76.    Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

77.    Defendant manufactured and distributed Products for sale to Plaintiff and the Class and Sub-class members.

79.    Defendant impliedly warranted to Plaintiff and Class and Sub-class members that their Products were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

80.    As alleged herein, Defendant breached the implied warranty of merchantability because the Products suffer from a safety defect. The Products are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

81.    Due to the safety defect, Plaintiff and the members of the Class and Sub-class cannot use their Products as intended, substantially free from defects. The Products do not provide safe and reliable function as intended, represented, or described and pose a serious risk of injury. As a result, Plaintiff and the members of the Class and Sub-class cannot use their Products for the purposes for which they purchased them.

82.    Furthermore, due to the safety defect, Plaintiff and the Class and Sub-class members cannot operate their Products as intended, substantially free from defects, unless they elect to use a replacement inner pot that holds substantially less volume than that which they purchased. As a result, Plaintiff and members of the Class and Sub-class cannot use their Products for the purposes for which they purchased them.

83.    Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and

proximate result of the breach of implied warranty of merchantability, Plaintiff and Class and Sub-class members have been injured in an amount to be proven at trial.

<u>**COUNT II**</u>
**VIOLATIONS OF STATE CONSUMER FRAUD ACTS**
**(On behalf of Plaintiff and the Consumer Fraud Multi-State Subclass)**

84.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

85.    Plaintiff brings this Count on behalf of herself and the Consumer Fraud Multi-State Subclass against Defendant.

86.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Subclass prohibit unfair or deceptive business practices in trade or commerce.

87.    Plaintiff and the other Members of the Consumer Fraud Multi-State Subclass have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Subclass because Plaintiff and Members of the Consumer Fraud Multi-State Subclass have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

88.    Defendant engaged in unfair and/or deceptive conduct by making misrepresentations and material omissions regarding harmful choking hazards in the Products, as discussed herein.

89.    Defendant intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Subclass would rely upon its unfair and deceptive conduct, and a reasonable person would be misled by this deceptive conduct described above.

90.    Given Defendant's position in the consumer products and baby products industry and its growing popularity as an established and trustworthy national (even international) brand,

Plaintiff and reasonable consumers trusted and relied on Defendant's misrepresentations and material omissions of the defect in the Product that can cause a choking hazard if childran have access to the pieces of foam.

91.      As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and the other Members of the Consumer Fraud Multi-State Subclass have sustained damages in an amount to be proven at trial.

92.      In addition, Defendant's conduct showed malice, motive, and reckless disregard for the truth, so an award of punitive damages is appropriate.

**<u>COUNT III</u>**
**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**California Civil Code §§ 1750, *et seq*. ("CLRA")**
**(On behalf of Plaintiff and the California Subclass)**

93.      Plaintiff re-alleges and incorporates all preceding factual allegations as set forth fully herein.

94.      Plaintiff brings this cause of action on behalf of herself and the Nationwide Class and/or California Subclass Members against Defendant.

95.      Plaintiff and California Class members are consumers who purchased the Products for personal, family or household purposes.  Plaintiff and the California Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

96.      The Products that Plaintiff and California Class members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

97.      Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

98.    Defendant's marketing and labeling of the Products is false and misleading, and its omission of the Defect is false and misleading to reasonable consumers, including Plaintiff. As discussed above, Defendant's representations concerning the safety and qualities of the Products are false and misleading due to the Defect. Further, because of the Defect, the Products cannot be used for their principal or intended purpose, and are effectively worthless. The Products are unreasonably dangerous products that are unfit for consumption or sale.

99.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair acts or practices, in that Defendant misrepresents the particular characteristics, uses, benefits, and quantities of the Products.

100.    Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair acts or practices, in that Defendant misrepresents the particular standard, quality or grade of the goods.

101.    Plaintiff and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were accurate, true and lawful.

102.    Plaintiff and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Products absent Defendant's misrepresentations and omissions; (b) they would not have purchased the Products on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for the Products due to Defendant's misrepresentations and omissions; and (d) the Products did not have the characteristics, benefits, or quantities as promised.

103.    Plaintiff and California Class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and California Class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

104.    Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from the purchase of the Noticed Product is determined to

be an amount less than the premium price of the Noticed Product.  Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which he is entitled.

105.    Contemporaneous with the filing of this Complaint, Plaintiff, through counsel, will provide notice to Defendant pursuant to Cal. Civ. Code § 1782(a) via certified mail. As the 30-day response period has not yet lapsed, Plaintiff claims no damages pursuant to this count, but will timely amend this Complaint after expiration of the response period to seek money damages and punitive damages under the CLRA. At this time, Plaintiff seeks only injunctive or other equitable relief under the CLRA as described above.

## COUNT IV
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,
California Business & Professions Code §§ 17200, *et seq.* ("UCL")
(On Behalf of Plaintiff and the California Class)

106.    Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

107.    Plaintiff brings this Count on behalf of herself and the California Class.

108.    Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful [or] unfair … business practices and unfair, deceptive, untrue or misleading advertising …."

109.    Defendant's marketing and labeling of the Products is false and misleading, and its omission of the Defect is false and misleading to reasonable consumers, including Plaintiff.  As discussed above, Defendant's representations concerning the safety and qualities of the Products are false and misleading due to the Defect.  Further, because of the Defect, the Products cannot be

used for their principal or intended purpose, and are effectively worthless. The Products are unreasonably dangerous products that are unfit for use or sale.

110.    Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the CLRA, the FAL and other applicable law as described herein.

111.    Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers. Selling the Products in a manner that makes them inherently dangerous is of no benefit to consumers. Defendant's sale of the Products with the Defect causes a threat to public health, safety, and morality. Consumers are unwittingly purchasing and consuming the Products without knowing that they are ineffective and inherently dangerous, which in no way provides any benefit to consumers.

112.    Plaintiff and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were not misleading, true and lawful.

113.    Plaintiff and the California Class lacks an adequate remedy at law for the same reasons alleged above.

114.    Plaintiff and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Products absent Defendant's misrepresentations and omissions; (b) they would not have purchased the Products on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for the Products due to Defendant's misrepresentations and omissions; and (d) the Products did not have the characteristics, benefits, or quantities as promised.

<u>COUNT V</u>
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,**
**California Business & Professions Code §§ 17500, *et seq.* ("FAL")**
**(On Behalf of Plaintiff and the California Class)**

115.    Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

116.    Plaintiff brings this Count on behalf of herself and the California Class.

117.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

118.    Defendant engaged in a scheme of offering mislabeled Products for sale to Plaintiff and the California Class members by way of product packaging, labeling, and other promotional materials.    These materials misrepresented and/or omitted the true content and nature of the Products.    Defendant's advertisements, labeling, and inducements come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that the product packaging, labeling, and promotional materials were intended as inducements to purchase the Products, and are statements disseminated by Defendant to Plaintiff and Class members.    Defendant knew, or reasonably should have known, that these statements were unauthorized, inaccurate, and misleading.

119.    Defendant's marketing and labeling of the Products is false and misleading, and its omission of the Defect is false and misleading to reasonable consumers, including Plaintiff.    As

discussed above, Defendant's representations concerning the safety and qualities of the Products are false and misleading due to the Defect. Further, because of the Defect, the Products cannot be used for their principal or intended purpose, and are effectively worthless. The Products are unreasonably dangerous products that are unfit for consumption or sale.

120.    Defendant knew or should have known, through the exercise of reasonable care that its representations and omissions were false and misleading and that the Defect caused the Products to be unreasonably dangerous products that are unfit for use or sale.

121.    Plaintiff lacks an adequate remedy at law for the same reasons alleged above.

122.    Plaintiff and the Class suffered injuries caused by Defendant because (a) they would not have purchased the Products absent Defendant's misrepresentations and omissions; (b) they would not have purchased the Products on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for the Products due to Defendant's misrepresentations and omissions; and (d) the Products did not have the characteristics, benefits, or quantities as promised.

## <u>COUNT VI</u>
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Nationwide Class and/or the California Subclass and/or the Consumer Fraud Multi-State Subclass)

123.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

124.    Plaintiff brings this Count on behalf of herself and the Nationwide Class and/or the California Subclass and/or the Consumer Fraud Multi-State Subclass against Defendant.

125.    Plaintiff brings this claim in the alternative.

126.    This claim is brought under the laws of the State of California.

127.    Defendant's conduct violated, *inter alia*, state, and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Products while misrepresenting and omitting material facts.

128.    Defendant's unlawful conduct allowed Defendant to knowingly realize substantial revenues from selling the Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class members and to Defendant's benefit and enrichment. Defendant has violated fundamental principles of justice, equity, and good conscience.

129.    Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

130.    Defendant knowingly received and enjoyed the benefits conferred by Plaintiff and Class members.

131.    It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class members' overpayments.

132.    Plaintiff and Class members seek to establish a constructive trust from which Plaintiff and Class members may seek restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendant as follows:

> a.    Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Class and Subclasses, and designating Plaintiff's counsel as Class Counsel;

b.   Enter an order declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

c.   Awarding Plaintiff and Class members compensatory, statutory, or other monetary damages, in an amount to be determined at trial;

d.   Awarding Plaintiff and Class members appropriate relief, including but not limited to actual damages;

e.   For restitution and disgorgement of profits;

f.   Awarding Plaintiff and Class members reasonable attorneys' fees and costs as allowable by law;

g.   Awarding pre-judgment and post-judgment interest;

h.   For punitive damages; and

i.   Granting any other relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: May 5, 2025                          Respectfully Submitted,

**SIRI | GLIMSTAD**

By: *<u>/s/Christina Xenides</u>*
Christina Xenides
Lisa R. Considine (*pro hac vice* forthcoming)
Mason A. Barney (*pro hac vice* forthcoming)
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email : cxenides@sirillp.com
Email: lconsidine@sirillp.com
Email: mbarney@sirillp.com

28

**LAUKAITIS LAW LLC**

*/s/ Kevin Laukaitis*
Kevin Laukaitis
954 Avenida Ponce DeLeon
Suite 205 - #10518
San Juan, PR 00907
Phone: (215) 789-4462
Email: klaukaitis@laukaitislaw.com

***Attorneys for Plaintiff and the Proposed Classes***