UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CRYSTAL SHORE et al., Plaintiffs, v. DOREL JUVENILE GROUP, INC., Defendant. | ) | Civil Action No. 25-11232-LTS |

ORDER IMPOSING SANCTIONS

May 12, 2026

SOROKIN, J.

The issue necessitating this sanctions order arose when a lawyer, at the end of the drafting process, used artificial intelligence ("AI") tools to revise a brief jointly authored by three firms who represent the plaintiffs. The lawyer did not verify the substantive accuracy of the AI revisions, disclose to co-counsel his use of AI tools, or provide co-counsel with a redlined copy of the final product identifying the changes he made. When defense counsel (somewhat subtly) pointed out that the plaintiffs' brief contained fabricated quotations, none of the lawyers responded by seeking to correct their submission. In light of the fabricated quotations, the Court later issued an Order to Show Cause, Doc. No. 31, to which all the lawyers responded quite appropriately, see Doc. Nos. 32, 34.[1] The Court has considered the totality of the circumstances, including the three firms' differing roles and responsibilities, the attorneys' failure to adequately respond prior to judicial intervention, and the lawyers' appropriate (if belated) response and

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header.

remedial measures thereafter. In particular, the seriousness with which the lawyers responded to the show-cause order merits a different response than the filing alone would otherwise warrant.

Because the opposition brief contains numerous errors, see Doc. No. 32-1 at 14–16, and for the further reasons explained below, the Court STRIKES the brief and permits the plaintiffs to file a revised opposition (to which the defendant may reply). The Court also imposes limited sanctions on the firm that bears primary responsibility for these errors. Below, the Court explains the relevant facts, addresses both the issues common to all the lawyers and their individual responsibilities, and imposes the appropriate consequences.

## I. BACKGROUND

Plaintiffs are represented by three firms: Laukaitis Law LLC, Siri & Glimstad LLP, and Poulin | Willey | Anastopoulo ("PWA"). To draft the plaintiffs' opposition to the defendant's motion to dismiss, the firms divvied up the brief into three sections. Doc. No. 32-1 ¶ 5; Doc. No. 32-3 ¶¶ 6–7; Doc. No. 32-4 ¶ 6. Attorneys at the firms drafted their sections without the use of AI tools. Doc. No. 32-2 ¶¶ 2, 17; Doc. No. 32-3 ¶¶ 6, 14; Doc. No. 32-4 ¶ 8. Nothing before the Court suggests a deviation from standard practice in the preparation of these sections.

The firms then sent their drafts to Laukaitis Law for compilation and final revisions. Doc. No. 32-1 ¶ 5. After compiling the sections, attorney Kevin Laukaitis (founding member of Laukaitis Law LLC) used AI tools—ChatGPT and Claude—to finalize the brief "with the intent to improve the brief's writing style and coherence." Id. ¶¶ 1, 6.

The AI tools "re-wrote some of the quotations," apparently introducing fabricated quotations that were attributed to real cases, and Attorney Laukaitis did not verify those quotations or citations. Id. ¶¶ 6–7. Attorney Laukaitis did not undertake a careful substantive review of the revisions, nor did he alert his co-counsel to his use of the AI tools.

Attorney Laukaitis then sent the completed brief (which included the AI-based fabrications) to co-counsel at Siri & Glimstad. Id. He did not advise them of the AI revisions to the brief. A Siri & Glimstad attorney confirmed that all citations in the brief were "complete and that the cases all existed," but the attorney did not "review the quoted material" to verify its accuracy. Doc. No. 32-3 ¶¶ 9–11. Siri & Glimstad submitted the brief through a firm attorney who served as local counsel and who, in that capacity, "did not do an individual cite check."[2] Doc. No. 34 ¶ 8. The PWA attorneys did not see the final draft before it was submitted to the Court on October 17, 2025. Doc. No. 32-4 ¶ 7.

Defendant filed a reply on October 31, 2025. Doc. No. 30. That brief pointed out that two quotes in the opposition brief did not appear in the cited cases. Id. at 5 n.1 ("[T]he quote attributed to In re Evenflo . . . on page 5 of the opposition appears nowhere in that decision."); id. at 18 n.3 ("[T]he quotation Plaintiffs attribute to the Daugherty decision on page 10 of the [o]pposition does not appear in that opinion."). Neither in response to this filing nor at any time in the nearly six months that followed did any of the attorneys representing Plaintiffs attempt to correct or explain these errors. This inaction fell short of the standard of proper practice.

Several months later, when the Court reviewed the motion papers, it too identified fabricated quotations and other apparent misrepresentations of the law in the opposition brief, and it ordered Plaintiffs to "show cause why the Court should not (1) strike their opposition brief; (2) sanction counsel for submitting a brief that does not comply with the dictates of Rule 11; and/or (3) impose any other sanction, including without limitation revoking pro hac vice

[2] Under the circumstances, the Court does not view local counsel (Attorney Xenides) as responsible for these missteps. Attorney Xenides, a partner at Siri & Glimstad who is licensed in Massachusetts and admitted to the District of Massachusetts, effectively serves as the filing attorney for this case. Doc. No. 34 ¶¶ 2, 6, 8. She is not otherwise involved. In this context, she was entitled to rely upon her colleagues to review pleadings and respond appropriately.

admission or referring counsel to the appropriate state bar licensing authority." Doc. No. 31 (citation omitted). Following the Court's April 24 show-cause order, all of the lawyers involved took various steps to rectify the situation. The attorneys and firms each stand in different shoes, and the discussion that follows addresses each accordingly.

## II. DISCUSSION

Two issues are relevant across the board. First is the failure, by all of the attorneys, to timely address the concerns about two fabricated quotations raised by the reply brief. A reasonably prudent attorney would promptly review an opponent's responsive filing. When an opponent's brief suggested their own contained nonexistent quotations, that attorney would check the accuracy of the challenged quotes. And upon learning that a court filing they submitted contained fabricated quotations (or any false or misleading statement), that attorney would, as a matter of diligence—not to mention professional obligation—promptly notify the Court and take remedial measures. See Model Rules of Pro. Conduct 3.3(a)(1) (A.B.A. 2025); cf. Fed. R. Civ. P. 11(b)(2). Indeed, upon receipt of the defendant's reply brief, the attorneys should have, at minimum, verified whether the defendant's assertions were correct, alerted the Court they agreed with the defendant's assertions, requested to withdraw and replace the opposition brief, and proposed an opportunity for the defendant to make a supplemental reply.

Here, the attorneys failed to take this reasonably prudent course. None of the attorneys representing the plaintiffs addressed the issue until after the Court's April 24 show-cause order. Nor do the attorneys offer compelling explanations for this oversight; they say they simply did not review the defendant's reply brief thoroughly enough to understand that it pointed to two fabricated quotations in their own brief. Doc. No. 32-1 ¶ 5; Doc. No. 32-3 ¶ 12; see also Doc. No. 32 at 3–4. Had they acted prudently, counsel would have corrected their filing prior to judicial intervention.

Second, as it turns out, the opposition brief contained nearly two dozen fabricated quotations, misquotations, or incorrect legal citations. See Doc. No. 32-1 at 14–16 (documenting these misrepresentations). The additional errors were brought to the Court's attention by counsel for the plaintiffs in their response to the show-cause order.[3] Though tardy, the Court appreciates the candor and thoroughness of counsel.

Because the AI-based errors in the brief were pervasive, the appropriate course is to STRIKE the opposition (Doc. No. 29). In light of the preference for resolution on the merits and the fact that these errors are fairly traceable only to the lawyers and not their clients, the Court will permit the plaintiffs to file a revised opposition brief on the timeline specified below.

The Court now turns to considerations and consequences particular to each firm.

A. Laukaitis Law LLC

Laukaitis Law bears primary responsibility for the fabricated quotations in Plaintiffs' opposition brief. Doc. No. 32-1 ¶ 3. Attorney Laukaitis's use of certain AI tools introduced the fabrications into the brief. He further failed to review the AI tools' changes to verify their accuracy, to advise co-counsel about his use of AI, or even to identify through a redline the changes that he authorized—and then he ignored the issue when it was raised in the reply brief.

Since the show-cause order, Attorney Laukaitis has apologized to the Court and to counsel, paid defense counsel's fees for the reply, and completed continuing education courses regarding the use of AI in legal practice. Doc. No. 32-1 ¶¶ 10, 15, 18. Laukaitis Law has adopted an AI policy that, among other things, requires the "responsible attorney" to

---

[3] Counsel's filing identifies inaccurate quotations and citations and offers a brief explanation for each inaccuracy. In some cases, the stated proposition of law is plainly correct, even though the quotation itself is inaccurate. See, e.g., Doc. No. 32-1 at 14 (statement of Rule 9(b) pleading standard). Others are not so obvious. Better practice would have been to include a citation to support each claim that a quote's "proposition is generally accurate."

"independently verify[] the accuracy of all citations; the correctness of quoted language; the validity of legal standards; and the factual accuracy of all representations." Doc. No. 32-1 ¶¶ 12–13; Doc. No. 32-2 ¶¶ 17–18. After the Court's April 24 show-cause order, the firm has further shored up its review process. Doc. No. 32-1 ¶ 14.

These were appropriate responses. The Court urges Laukaitis Law and its attorneys to take the following additional remedial measures to the extent they are not already encompassed in firm policy:[4] (1) to disclose its AI-use policy to co-counsel; (2) to disclose to co-counsel when its attorneys and staff use AI tools to prepare jointly filed briefs and other court filings; (3) to disclose in redline to co-counsel (or other attorneys within the firm) changes made to filings bearing their name; and (4) when filing briefs that were prepared using the assistance of AI tools, to independently verify the accuracy of each quotation, citation, and proposition prior to filing. **Laukaitis Law SHALL FILE a status report, within twenty-one days of this Order, stating whether it has implemented the suggested procedures or similar measures. The Court ORDERS Attorney Laukaitis to pay $2,500 to Defendant in light of the time and resources wasted by the Court and counsel on this avoidable problem and to effectively deter similar misconduct.** No further sanctions are warranted in light of the response of Attorney Laukaitis and his firm to the show-cause order.

B. Siri & Glimstad LLP

At the time of the filing of the opposition brief, Siri & Glimstad's policy barred the use of AI to assist with the drafting of pleadings and other court filings. Doc. No. 32-3 at 11. Since

[4] This case illustrates the consequences of failing to erect adequate guardrails around the use of AI tools. The Court recognizes, however, that the appropriate use of AI tools in preparing court filings (as with the use of AI more broadly) involves rapidly evolving circumstances. Though the remedial measures identified herein strike the Court as diligent, ethical practices that are largely independent of AI, the Court declines to enshrine in a court order a law firm's internal operating procedures. Thus, the Court encourages but does not require these particular measures.

then, the firm has adopted an AI platform, policies to govern attorneys' use of the AI tool, software to detect the use of AI in court filings, and a co-counsel AI-disclosure requirement. Id. at 9, 11–13. Siri & Glimstad attorneys should consider the additional remedial steps noted above. No further sanctions or consequences are warranted in light of Siri & Glimstad's role and response to the show-cause order.

C. Poulin | Willey | Anastopoulo

PWA reports that its attorneys do not use AI tools to assist with court filings. Doc. No. 32-4 at 3–4. PWA should inquire into co-counsel's use of AI tools, and its co-counsel agreements should include a provision requiring verification of all citations and quotations (either by PWA attorneys or by co-counsel) when AI is used by co-counsel to draft a court filing. PWA should also consider the additional remedial steps noted above. No further sanctions or consequences are warranted in light of PWA's role and response to the show-cause order.

## III. CONCLUSION

The plaintiffs' opposition brief (Doc. No. 29) is hereby STRUCK. Plaintiffs may file a revised opposition by May 19, 2026. Defendants may file a new reply brief, due fourteen days after Plaintiffs' submission.

Attorney Laukaitis and Laukaitis Law shall comply with the orders specified above. Beyond the consequences described in this Order, no further consequences, sanctions, or referrals are warranted because of the forthcoming and candid (if belated) responses of counsel. The Order to Show Cause (Doc. No. 31) is now discharged.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge